UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CLAIRE HUFFMAN,

                Plaintiff,

     -against-

BROOKLYN COLLEGE, THE CITY UNIVERSITY
OF NEW YORK, and ANNE LOPES,

                Defendants.

**MEMORANDUM & ORDER**
**20-CV-06156 (NGG) (TAM)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Claire Huffman brings this employment discrimination action against Brooklyn College, the City University of New York, and Provost Anne Lopes following that school's decision to cancel its Italian major. Defendants move to dismiss the amended complaint. For the following reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

## I. FACTUAL BACKGROUND

Claire Huffman, a 75-year-old Italian Professor, has taught at Brooklyn College – part of the CUNY system – since 1972. She brings this action to challenge a change in the terms of her employment that followed the school's decision to cancel its Italian major. (Am. Compl. (Dkt. 17) ¶¶ 21-23, 42, 55-60.) In doing so, Huffman, an expert in Italian language and literature, was required to instead teach English literature and film, and had her teaching schedule modified in such a way that was more onerous, less convenient, and less prestigious. (*Id.* at ¶¶ 55-60.) She alleges that the changes (1) constituted an adverse employment action against her, and (2) were motivated by discrimination on the basis of age and national origin. As evidence of this, Huffman claims that the official making the decision, Anne Lopes, Brooklyn College's Provost, told her that the Italian professors would be teaching into their eighties if the major continued, and that

1

there was no reason to keep the major because "[t]he Italians all moved out of Brooklyn, so you don't have a basis for a major anymore." (*Id.* at ¶¶ 45, 47.) Huffman claims that the fact other majors in the same department (Spanish and French) were not canceled, even though they were in relatively less demand by students, is further evidence of an anti-Italian bias. (*Id.* at ¶ 48.) Moreover, languages without their own major, and some with neither a major nor a minor, continued to be taught while Italian was canceled. (*Id.* at ¶ 53.) And other professors, younger and expert in other languages, were not subjected to similar changes in their employment – whereas all the Italian professors were older and of Italian descent. (*Id.* at ¶¶ 54, 62.) Finally, Huffman notes that CUNY has a history of discrimination against Italian Americans and her performance has not otherwise come into question over the course of her career. (*Id.* at ¶¶ 34, 37, 39.)

After bringing this action, Huffman also says she was retaliated against. (*Id.* at ¶¶ 66-73.)

## II. PROCEDURAL BACKGROUND

Huffman first filed a complaint with the Equal Employment Opportunity Commission, and received a "right to sue letter" from the Commission on September 23, 2020. (*Id.* at ¶ 5.) In her amended complaint Huffman alleges violations of Title VII, the Age Discrimination in Employment Act ("ADEA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). She seeks compensatory and punitive damages and attorneys' fees from the College and Provost Lopes. Defendants move to dismiss on the basis of sovereign immunity, arguing that only the Title VII count against CUNY is

not so barred,[1] and further move to dismiss all counts pursuant to Rule 12(b)(6) for failure to state a claim.

This case is substantially similar to *Bonaffini*, brought by another of Huffman's colleagues in the Italian department and making many of the same allegations. *See Bonaffini v. City Univ. of New York*, No. 20-CV-5118 (BMC), 2021 WL 2206736 (E.D.N.Y. June 1, 2021) (*Bonaffini I*); *Bonaffini v. City Univ. of New York*, No. 20-CV-5118 (BMC), 2021 WL 2895688 (E.D.N.Y. July 9, 2021) (*Bonaffini II*). CUNY likewise moved to dismiss that case, making many of the same arguments it makes here. For the reasons below, the court substantially agrees with Judge Cogan's disposition of that case.

### III. DEFENDANTS' MOTIONS TO DISMISS ON THE BASIS OF SOVEREIGN IMMUNITY

Defendants argue first that sovereign immunity bars Huffman's ADEA, NYSHRL, and NYCHRL claims against CUNY and Lopes in her official capacity. The court agrees with Defendants that for each claim, New York has neither consented to be sued nor waived its immunity, and Congress has not abrogated it.[2] *See McGinty v. New York*, 251 F.3d 84, 95 (2d Cir. 2001) (ADEA); *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 449 (2d Cir. 1999) (NYSHRL), *abrogated on other grounds*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004) (NYCHRL).

---

[1] Defendants argue, and the court agrees, that CUNY is the proper organizational defendant and Brooklyn College may not be separately sued. *See Clissuras v. City Univ. of New York*, 359 F.3d 79, 81 n.2 (2d Cir. 2004). The Clerk is respectfully directed to remove Brooklyn College from the caption of this case.

[2] Congress has, by contrast, abrogated states' sovereign immunity for Title VII claims. Despite its name, CUNY is a state agency.

Plaintiff responds that the *Ex parte Young* exception applies where a plaintiff alleges an ongoing violation of federal law and seeks prospective relief. Trouble is, (1) neither the NYSHRL nor NYCHRL are federal laws; and (2) Plaintiff does not actually seek prospective relief, regardless of her attempt to claim otherwise. (*See* Pl.'s Mem. in Opp. ("Opp.") (Dkt. 22) at 10 ("Plaintiff seeks relief 'designed to compensate for' prospective—as well as 'past'—violations.").)

Classically, *Ex parte Young* is premised upon a basic dichotomy between "notions of an ongoing wrong, remedied prospectively, [and] a past wrong for which compensation is sought, [remedied] retroactive[ly]." *New York City Health & Hosps. Corp. v. Perales*, 50 F.3d 129, 130 (2d Cir. 1995).[3] Accordingly, where sovereign immunity applies, "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief [pursuant to *Ex parte Young*], and may not include a retroactive award which requires the payment of funds from the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 677 (1974). Yet that is precisely what Plaintiff seeks: each count of the amended complaint requests damages for retrospective harm, not an injunction for an ongoing wrong. (*See* Am. Compl. at pp. 19-20.) Because the *Ex parte Young* doctrine therefore does not apply, Defendant's motion is GRANTED as to CUNY and Lopes in her official capacity on the ADEA, NYSHRL, and NYCHRL counts.[4]

---

[3] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted and all alterations are adopted.

[4] When acting in their official capacities, state officials' immunity is coextensive with the state's. *See California v. Deep Sea Rsch., Inc.*, 523 U.S. 491, 502 (1998) ("a state official is immune from suit in federal court for actions taken in an official capacity").

### IV. DEFENDANTS' MOTIONS TO DISMISS AGAINST LOPES IN HER INDIVIDUAL CAPACITY

Defendants argue second that Provost Lopes cannot be held individually liable under the ADEA, NYSHRL, or NYCHRL, because (1) the ADEA does not provide for individual liability; (2) the NYSHRL does not reach Lopes because she is not Huffman's employer, and she cannot be an aider or abettor because CUNY is immune; and (3) the NYCHRL cannot give rise to individual liability because "even if Plaintiff's NYCHRL claims against Provost Lopes are styled as individual capacity claims, they are still barred by sovereign immunity because the actions of which Plaintiff complains . . . could only have been taken by Provost Lopes in her capacity as a State employee, not in her personal capacity." (Def.'s Mot. to Dismiss (Dkt. 21) at pp. 9-12.)

As to the first argument, the court agrees with Defendants that the ADEA does not provide for individual liability. *See Cherry v. Toussaint,* 50 F. App'x 476, 477 (2d Cir. 2002) ("the ADEA precludes individual liability"). Defendants' motion to dismiss the ADEA claim against Lopes in her individual capacity is therefore GRANTED.

As to the second and third arguments, the court agrees with Judge Cogan's reasoning in *Bonaffini*. In short, Lopes may be held liable as an aider and abettor even if not as an "employer"; and CUNY's sovereign immunity does not frustrate doing so because the Eleventh Amendment merely bars recovery – it does not extinguish predicate liability on the merits. *See Bonaffini II*, 2021 WL 2895688 at *3-4. And Lopes may still be held individually liable for actions she can only perform as a state official, because the logic of sovereign immunity doctrine – which is meant to protect the state's fisc – does not extend to judgments against its employees. *See id.* at *1-2. The court therefore declines to dismiss the NYSHRL or NYCHRL counts because they are brought against

5

Lopes in her individual capacity. Defendants still move, however, to dismiss those counts for failure to state a claim.

## V. DEFENDANTS' MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

### A. National Origin Discrimination

#### 1. Legal Standard

Defendants argue that Huffman's claims of discrimination on the basis of national origin – pursuant to Title VII, the NYSHRL, and the NYCHRL – fail to state a claim because Plaintiff fails to make out prima facie cases of discrimination. Under all three statutes, the claim is analyzed under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which developed the applicable framework in the Title VII context. *See also Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (applying the same framework to NYSHRL and NYCHRL claims).

"Under the *McDonnell Douglas* scheme, establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). To establish a prima facie case, a plaintiff must show that "(1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Walsh v. New York City Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016). The requirements are intended to be "minimal" and "not onerous." *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 128 (2d Cir. 2012).

At the motion to dismiss stage, the burden on the plaintiff is still lower. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (where the prima facie case functions as "an evidentiary standard, not a pleading requirement"). The complaint must "contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Mandala v. NTT Data, Inc.*, 975 F.3d 202, 208 (2d Cir. 2020) ("Over a series of opinions, we clarified that *Iqbal* does not require a plaintiff to plead a prima facie case."). Just enough "nonconclusory factual matter" must be pleaded in order to "[]cross the line from conceivable to plausible." *E.E.O.C. v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 254 (2d Cir. 2014).

In the employment discrimination context, on a motion to dismiss, the plaintiff must plausibly allege that (1) she suffered an adverse employment action, and that (2) the action was taken "at least in part for a discriminatory reason . . . alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). The substantive and pleading standards are largely the same as between Title VII, the NYSHRL, and the NYCHRL, except that the NYCHRL mandates it should be "construed liberally." N.Y.C. Admin. Code § 8-130; *see also Vega*, 801 F.3d at 86 (noting that the "motivating factor" standard applies to national origin discrimination claims, not "but-for" causation).

    2.  Discussion

Defendants argue that Huffman has failed at each step: that she has not plausibly alleged she was subject to an adverse employment action, and that she has not plausibly alleged the circumstances give rise to an inference of discrimination.

The court has little difficulty concluding that Huffman has plausibly alleged she was subject to an adverse employment action. Huffman, an expert in the poetry of Eugenio Montale and a decorated scholar of Italian language and literature, was reassigned by CUNY to teach general English courses. S*ee de la Cruz v. New York City Hum. Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 21

7

(2d Cir. 1996) (transfer "to a less prestigious unit with little opportunity for professional growth" constitutes an adverse employment action). Although the scheduling changes Huffman has had to endure may constitute "mere inconvenience," *Nicholls v. Brookdale Univ. Hosp. & Med. Ctr.*, 205 F. App'x 858, 861 (2d Cir. 2006), the transfer of her teaching responsibilities to an entirely different field works a "radical change in the nature of [Plaintiff's] work" that "interferes with a condition or privilege of employment," *Rodriguez v. Board of Educ.*, 620 F.2d 362, 366 (2d Cir. 1980) (transfer of an art teacher from a middle school to an elementary school "render[ed] utterly useless her twenty years of experience and study in developing art programs for middle school children"). Indeed there may be no better exemplar of unique expertise than a university academic; in this case, Huffman's job responsibilities were not merely altered – she was forced into what was an entirely different job.

Whether the circumstances Huffman has alleged give rise to a plausible inference of discrimination is a closer call. The Second Circuit has directed lower courts to consider three factors in assessing whether a plaintiff has "plausibly" alleged facts that give rise to an inference of discrimination. *See Vega*, 801 F.3d at 86-87. First, the plaintiff must plead "factual content" (which the court assumes to be true) and not formulaically recite the legal elements of an allegation. *Id.* at 86. Second, the court must "draw on its judicial experience and common sense," mindful that in discrimination cases evidence is elusive and easily concealed, and that at the motion to dismiss stage the plaintiff's burden is minimal. *Id.* at 86 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 310 (2d Cir. 2015) (requiring only "minimal support for the proposition that the employer was motivated by discriminatory intent"). Third, the court must be careful not to require that a plaintiff convince it that it is "likely to prevail." *Id.* at 87 (quoting

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007) (requiring that plaintiffs merely "nudge[] their claims across the line from conceivable to plausible")).

Mindful of these instructions, the court again agrees with Judge Cogan's reasoning in *Bonaffini* and concludes that Plaintiff has met her burden. Huffman has pleaded facts that suggest demand for Italian courses remained robust among students; that other less in-demand languages were not canceled; and that the Italian department was distinguishable from others because it consisted entirely of people of Italian descent (all of whom were also over the age of 62, see Part B, *infra*). Moreover, Huffman has alleged statements made by Lopes that at least plausibly suggest that the national origin (and age, see *infra*) of the instructors was on Lopes's mind, and may have been a motivating factor behind her decision. Even as indirect, inferential evidence, such allegations are indeed "weak." *Bonaffini II*, 2021 WL 2895688 at *4. But they sufficiently "nudge" Huffman's claim "from conceivable to plausible." *Vega*, 801 F.3d at 87. The court therefore DENIES Defendants' 12(b)(6) motions to dismiss the national origin Title VII count against CUNY and the national origin NYSHRL and NYCHRL counts against Lopes in her individual capacity.

### B. Age Discrimination

#### 1. Legal Standard

Plaintiff's age discrimination claims under the NYSHRL and NYCHRL substantially mirror the analysis under the ADEA, which requires that the plaintiff plausibly allege that "an employer took adverse action 'because of' age [and] that age was the 'reason' that the employer decided to act." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 303 (2d Cir. 2021) (quoting *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 174 (2009)). The Second Circuit has assumed without deciding that a "but-for" causation standard applies to the NYSHRL, whereas a "motivating factor" standard may still apply to the NYCHRL. *See Gorzynski v. JetBlue Airways Corp.*,

596 F.3d 93, 105 n.6 (2d Cir. 2010). Therefore, at least in the NYSHRL context, a plaintiff must plead "facts which plausibly suggest that (1) the employer took an adverse action and (2) age was the 'but for' cause of that adverse action." *Boonmalert v. City of New York*, 721 F. App'x 29, 32 (2d Cir. 2018) (summary order).

### 2. Discussion

The court's conclusion that Huffman suffered an "adverse employment action" applies equally in the national origin and age discrimination contexts. Because the court holds that the requirement was satisfied in the Title VII context, it is necessarily also satisfied in the NYSHRL and NYCHRL contexts. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n.1 (2d Cir. 2000); *cf. Mihalik v. Credit Agricole Cheuvreux*, 715 F.3d 102, 109 (2d Cir. 2013) (requiring a more liberal construction of NYCHRL claims).

Further, the court finds that Huffman plausibly alleges facts that suggest age was a "but-for" cause of the adverse employment action she experienced – and therefore both her NYSHRL and NYCHRL claims survive, notwithstanding the uncertainty as to their precise pleading standards after *Gorzynski*. Because this motion to dismiss must be decided on the basis of the facts as alleged in Plaintiff's complaint, there is much we do not yet know about why CUNY canceled the Italian major at Brooklyn College. It apparently remained popular with students despite Provost Lopes's alleged statement that "[t]he Italians all moved out of Brooklyn." But it is at least plausible that CUNY decided that, unlike a number of other languages assigned a full schedule (allegedly Arabic, Japanese, Chinese, German, and Russian, *see* Am. Compl. ¶ 53), Italian might not be so popular in the future, and it was the only department with faculty all over the age of 60. Whether the allegation can survive summary judgment or a jury trial remains to

10

be seen. It suffices, however, to plausibly allege that the employment action would not have been taken but for the professors' age.

### C. Retaliation

Though Plaintiff's narrative of events includes discussion of possible retaliation, she neither alleged a retaliation claim in her complaint, nor raised it in her motion papers. The court considers it waived.

## VI. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are GRANTED in part and DENIED in part. The following of Huffman's claims survive: as against CUNY, national origin discrimination in violation of Title VII; and as against Lopes in her individual capacity, national origin discrimination in violation of the NYSHRL and the NYCHRL, and age discrimination in violation of the NYSHRL and the NYCHRL. The parties are directed to contact Magistrate Judge Taryn A. Merkl to proceed with discovery in this case.

SO ORDERED.

Dated:   Brooklyn, New York
         January 5, 2022

                                    /s/ Nicholas G. Garaufis
                                    NICHOLAS G. GARAUFIS
                                    United States District Judge

11